**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 16, 2023

S23Y0743.  IN THE MATTER OF RAMON DAVID SAMMONS JR.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation issued by Special Master Charles D. Jones, at the request of Ramon David Sammons Jr. (State Bar No. 623560), pursuant to Bar Rules 4-214 and 4-216.  The formal complaint upon which this disciplinary proceeding was based alleged that Sammons, who has been a member of the Georgia Bar since 1999, had violated Rules 1.2 (a) (lawyer shall abide by a client's decisions concerning the scope and objectives of representation and shall consult with the client as to the means by which they are to be pursued); 1.3 (lawyer shall act with reasonable diligence in representation); 1.4 (lawyer shall

reasonably communicate with the client); and 5.5 (lawyer shall not engage in the unauthorized practice of law) of the Georgia Rules of Professional Conduct ("GRPC") found in Bar Rule 4-102 (d).[1]

After the Bar's initial attempt to personally serve Sammons could not be perfected, it served him by publication and then moved for an entry of default against Sammons. However, the Special Master then suggested that the Bar make "more effort" to perfect personal service upon Sammons, and the Bar was able to discover Sammons's correct home address and personally served him there. Sammons then filed his answer to the formal complaint within 30 days, as required by Bar Rule 4-212 (a). Nonetheless, the Special Master later entered an order of default against Sammons, followed by the Special Master's report and recommendation that Sammons be disbarred. Sammons filed exceptions to and requested review of the Special Master's report and recommendation. In its report, the Review Board recommended that the Special Master's entry of

---

[1] The maximum penalty for violations of Rules 1.2, 1.3, and 5.5 is disbarment; the maximum penalty for a violation of Rule 1.4 is a public reprimand.

2

default against Sammons be vacated and that the case be remanded back to the Special Master for discovery and an evidentiary hearing on the merits of the alleged rule violations. The State Bar filed exceptions to the Review Board's report and recommendation, and Sammons has responded. After considering the record and the parties' arguments, we conclude that under the particular circumstances of this case, default should not have been entered against Sammons. We therefore vacate the Special Master's default order and his report and recommendation and remand this matter to the Special Master for proceedings on the merits of the alleged rule violations.

1. *Procedural Background.*

On October 28, 2020, after a finding of probable cause by the State Disciplinary Board, the State Bar filed the formal complaint underlying this matter. The formal complaint alleged that Sammons violated Rules 1.2 (a), 1.3, 1.4, and 5.5 during the course of his representation of an elderly client and her daughter in a personal injury matter against a nursing home due to Sammons's

3

repeated and ongoing inaction in the matter; his misrepresentations to the daughter; his failures to communicate with or respond to the daughter; his participation in the matter during periods when he was either suspended from the practice of law for CLE deficiency or ineligible to practice for nonpayment of dues; and his ultimate abandonment of the matter. On November 13, 2020, the Special Master was appointed.

On February 18, 2021, the Bar filed an entry of service non est inventus,[2] dated December 7, 2020, as well as a return of service by publication. On February 22, 2021, the Bar filed a motion for default. The record reflects that on March 3, 2021, the Special Master emailed counsel for the Bar, stating

> I need to see more effort at personal service on Mr. Sammons. Nothing in the materials provided to me indicate anyone attempted personal service on Mr. Sammons at his personal residence, most notorious abode, or present place of business. Beyond that, the hearsay contained in Para. 6 [of the Bar's motion for

---

[2] "The Latin term, sometimes shortened to 'non est' or abbreviated as 'n.e.i.,' means 'he is not found,' and is used to indicate that the person in question could not be found within the jurisdiction." *In the Matter of Arrington*, 314 Ga. 696, 697 n.3 (878 SE2d 534) (2022) (citing "*Non est inventus*," Black's Law Dictionary (11th ed. 2019)).

4

default], suggests Mr. Sammons does not work at 307 14th Street NW, Atlanta, GA 30318. That causes me concern for a number of reasons, but as a practical matter you may not have the correct email address for Mr. Sammons.

As it stands now, I will not grant the motion for default judgment. Let me know what you want to do. I can rule or you can withdraw it subject to my suggestions outlined above. Please make this email part of the record.

If you have any questions or concerns feel free to contact me.

In response, the Bar discovered Sammons's home address and on March 10, 2021, personally served him with the petition for appointment of a special master, the order appointing the special master, the notice of a finding of probable cause, and the formal complaint, and filed an entry of service that same day. On March 24, 2021, Sammons filed his answer and response to the formal complaint, as well as his answer and response to the Bar's motion for default. Sammons denied the alleged misconduct and rule violations and asserted defenses of insufficiency of process, insufficiency of service of process, and failure of timely service.

2. *Special Master's Order Entering Default against Sammons.*

On October 27, 2021, after accepting briefing on the default motion but without holding a hearing, the Special Master issued its order granting the Bar's motion for default. In that order, the Special Master set forth the following applicable Bar Rules: "Receipt of a Return of Service Non Est Inventus shall constitute conclusive proof that service cannot be perfected by personal service," Bar Rule 4-203.1 (b) (3) (i); "If personal service cannot be perfected, . . . service may be accomplished by publication . . .[,]" Bar Rule 4-203.1 (b) (3) (ii); and "[Respondent] shall file and serve his answer to the formal complaint . . . within 30 days after service of the formal complaint. If the respondent fails to answer or to obtain an extension of time for his answer, the facts alleged and violations charged in the formal complaint shall be deemed admitted." Bar Rule 4-212 (a). The Special Master noted that Sammons did not file an answer to the formal complaint within 30 days of the Bar's service by publication, did not request an extension, and did not move to open default. The Special Master also explained that after the Bar moved for default,

6

he suggested that it make additional efforts to personally serve Sammons; that in response, the Bar discovered Sammons's home address and personally served him there; and that Sammons then filed his answers and responses to the formal complaint—denying the allegations of the complaint without further explanation—and to the motion for default.

The Special Master rejected Sammons's argument that the Bar did not exercise the necessary due diligence in locating him before moving for default. The Special Master explained that Bar Rule 4-203.1 requires lawyers to keep the Bar informed of their official address and any changes thereto, and that the Bar may rely on that information in all efforts to perfect service upon a lawyer, meaning it was Sammons who had the responsibility to keep the Bar apprised of the information needed to serve him—a responsibility he failed to fulfill. The Special Master therefore determined that the Bar was authorized under the Bar Rules to first attempt service at the address provided by Sammons and then, after that attempt failed, to serve him by publication, which it did, and that Sammons "has

7

not contested or otherwise shown that the State Bar'[s] service of Respondent was done in violation of Bar Rule 4-203.1, notwithstanding my subsequent direction that the State Bar serve Respondent at his home. . . . The State Bar having properly served Respondent according to its rules, and Respondent having failed to file a timely answer, Respondent is in default."[3]

The Special Master then concluded that he was authorized to—and would—treat Sammons's response to the Bar's motion for default as a motion to open default, but that Sammons's request to open default did not satisfy OCGA § 9-11-55 or the standards set forth in *In the Matter of Turk*, which was Sammons's burden to show. See *In the Matter of Turk*, 267 Ga. 30, 30 (471 SE2d 842) (1996) ("OCGA § 9-11-55 (b) applies in disciplinary proceedings. Thus, in order to authorize the opening of [his] default, [Respondent] must show providential cause, excusable neglect[,] or a proper case.") (citation and punctuation omitted); see also *Butterworth v.*

---

[3] The Special Master also noted that Sammons made an unsupported claim that he emailed a response to the notice of investigation to the Bar's investigator, but that this did not change the Special Master's analysis.

*Safelite Glass Corp.*, 287 Ga. App. 848, 849 (652 SE2d 877) (2007) ("Compliance with the four conditions . . . [i.e., the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial], however, is a condition precedent; absent the showing of . . . [these conditions], a trial court has no discretion to open a default.") (citations omitted). The Special Master determined that Sammons failed to meet the conditions precedent, see *In the Matter of Starling*, 297 Ga. 359 (773 SE2d 768) (2015); *Butterworth*, 287 Ga. App. at 849-850, and that, regardless, he also failed to show providential cause, excusable neglect, or a proper case authorizing the opening of default, see *Bowen v. Savoy*, 308 Ga. 204, 207 (839 SE2d 546) (2020); *Turk*, 267 Ga. at 30-31.

3. *Special Master's Report and Recommendation.*

On September 12, 2022, the Special Master issued his report and recommendation, noting that by virtue of Sammons's default, he was deemed to have admitted the facts as set forth in the formal complaint. See Bar Rule 4-212 (a). The Special Master determined,

9

based on the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), that Sammons's misconduct was knowing and intentional; that Sammons caused his client actual and permanent injury (because the statute of limitations ran on his client's claim); that the following aggravating factors existed: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, a refusal to acknowledge the wrongful nature of his conduct, a vulnerable victim, substantial experience in the practice of law, and indifference to making restitution, see ABA Standard 9.22 (b), (c), (d), (e), (g), (h), (i), and (j); and that the following mitigating factors existed: absence of a prior disciplinary record and personal problems, see ABA Standard 9.32 (a) and (c). The Special Master recommended that Sammons be disbarred for violating Rules 1.2 (a), 1.3, and 5.5 (a), and publicly reprimanded for violating Rule 1.4. Sammons filed exceptions to and requested review of the Special Master's report and recommendation.

4. *Review Board's Report and Recommendation.*

On review, the Review Board issued its report and recommendation, concluding that the entry of default against Sammons was error and therefore recommending that the case be remanded to the Special Master for an evidentiary hearing on the merits of the alleged rule violations. The Review Board noted that the Bar has the burden of proving each element of the alleged rule violations by clear and convincing evidence and that the Review Board may reverse the Special Master's findings of fact if they are clearly erroneous or manifestly in error, but that his conclusions of law are reviewed de novo. See Bar Rule 4-216 (a).

The Review Board recounted that at the Special Master's suggestion, the Bar took additional steps to perfect personal service on Sammons, who, pursuant to Bar Rule 4-212, filed his answer within 30 days of being personally served. The Review Board acknowledged that "the rules regarding procedure of default and service do not mirror the Georgia Civil Practice Act," but stated it was "worth noting" that the entry of service non est inventus, dated

11

December 7, 2020, and the proof of service by publication were not filed until February 18, 2021; that under OCGA § 9-11-4 (h), "'[i]f proof of service is not filed within five business days [of the service date], the time for the party served to answer the process shall not begin to run until such proof of service is filed'"; and that under OCGA § 9-11-55, a respondent could open the default as a matter of right within 15 days of an answer being due. The Review Board opined:

> The Review Board has serious concerns about the rules giving the State Bar the ability to effectuate service by publication, especially when a lawyer can be so easily found, as was the case of the Respondent. The Review Board understands that the Bar Rules are what governs lawyers that practice in the State of Georgia, and that publication is a permissible (while certainly not preferred) method of service. In the case of the Respondent, the Special Master and the State Bar chose to go beyond the minimum required by the rules and have the Respondent personally served after the service by publication was effectuated. The Respondent then answered timely after personal service was effectuated. The State Bar and the Special Master should now be estopped from seeking and entering a Default Judgment based upon the original service by publication, when personal service was then made and an answer was timely filed.

12

Therefore, the Review Board recommended that "the entry of default be vacated, and that the case be remanded back to the Special Master for discovery and an evidentiary hearing as if no default had been granted."

5. *State Bar's Exceptions.*

The Bar contends that the Special Master did not err when he applied the Bar Rules precisely to the facts of Sammons's default. The Bar acknowledges that under Bar Rule 4-221.2 (b), "the procedures and rules of evidence applicable in civil cases under the laws of Georgia shall apply, except that the quantum of proof required of the State Bar shall be clear and convincing evidence," but argues that nothing in this rule suggests that when there is some conflict between the Bar Rules and the Georgia Civil Practice Act ("CPA"), the CPA was meant to abrogate the Bar Rules. More specifically, the Bar argues that the Review Board incorrectly applied OCGA §§ 9-11-4 (h) and 9-11-55 (a) and their different service and default rules—such as the requirement that a return of service be filed or the ability to open default within 15 days as a

matter of right—contrary to Bar Rules 4-203.1 and 4-212 (a), respectively.

The Bar also acknowledges that the Special Master initially prompted it to track down and personally serve Sammons—despite that suggestion being erroneous and not required by the Bar Rules—but contends that the Special Master later issued an order that fully considered the Bar Rules and correctly found Sammons to be in default because the Bar made prima facie showings that it had properly served Sammons and that he was in default according to the Bar Rules. See Bar Rule 4-203.1 (a), (b) (3) (i), (ii). The Bar argues that Sammons's default was consistent with his failure to engage with the disciplinary process, including his non-responsiveness during the investigative phase, as well as his failure to provide an updated address to the Bar as required by the Bar Rules. The Bar also argues that the Special Master correctly concluded that Sammons did not satisfy the requirements to open default.

The Bar contends that the Review Board erred when it applied the principle of judicial estoppel to the Special Master's timely reconsideration of his prior erroneous and informal suggestion to track down and personally serve Sammons, despite that suggestion contradicting the Bar Rules. In sum, the Bar argues that the Review Board's "concerns" that the Court-promulgated Bar Rules are contrary to the legislatively enacted CPA do not warrant rejection of the Special Master's application of the Bar Rules to the facts of this case.

6. *Sammons's Response to the State Bar's Exceptions.*

Sammons maintains his position that the Bar did not exercise due diligence in locating him as required by OCGA § 9-11-4 and Bar Rule 203.1 and that therefore he was not in default. He argues— relying in large part on the COVID-19 lockdowns of 2020 and the difficulties arising therefrom—that the Special Master erred in granting the Bar's motion for default and in refusing to open the default. Sammons also argues that contrary to the Bar's position, he has engaged in the disciplinary process, with any failures being

15

caused by circumstances such as the difficulties arising from the pandemic lockdowns, as well as his own misunderstanding of the process.

7. *Analysis and Conclusion.*

After reviewing the record, and pretermitting whether the Review Board's analysis contained certain legal errors, we conclude that under the circumstances of this case, Sammons was not in default at the time the Special Master issued the order entering default against him. Accordingly, the Special Master's order on the State Bar's motion for default and his report and recommendation, which relied upon that entry of default, are due to be vacated and the case remanded to the Special Master for proceedings on the merits of the violations alleged in the formal complaint.

In disciplinary proceedings, the Bar is entitled to rely upon the Bar Rules. That includes the Bar Rules permitting service by publication if personal service cannot be perfected, see Bar Rule 4-203.1 (b) (3) (ii), and authorizing the entry of default against a respondent who fails to timely answer after such service, see Bar

16

Rule 4-212 (a). A special master, therefore, would err in denying a motion for default in such circumstances and instead requiring additional efforts at personal service beyond those required by the Bar Rules. See Bar Rule 4-203.1 (b) (3) (i); see also Bar Rule 4-203.1 (a). Here, however, after the Special Master's email, the Bar chose— whether at the suggestion of the Special Master or not—to take additional steps to discover Sammons's home address and to perfect personal service upon him on March 10, 2021. The Bar's motion for default remained pending, having neither been granted nor denied, when Sammons, on March 24, 2021, "file[d] and serve[d] his answer to the formal complaint of the State Bar of Georgia pursuant to Rule 4-221 (b) within 30 days after service of the formal complaint." Bar Rule 4-212 (a). At that point, Sammons was not in default and an order of default should not have been entered against him. Cf. OCGA § 9-11-55 (a) (providing that if an answer is not timely filed, "the case shall *automatically* become in default") (emphasis supplied); *In the Matter of Boyd*, 315 Ga. 390, 394 (882 SE2d 339) (2022) (noting that "defaults in disciplinary cases most often involve

respondents who *completely fail to respond* to disciplinary proceedings," and that "the proper-case ground for opening a default should be liberally applied so as to keep with the policy of deciding cases on their merits") (emphasis supplied).

We acknowledge the Bar's predicament of being prompted by the Special Master to take additional efforts at personal service to avoid having its motion for default denied. Nevertheless, Sammons's timely answer after the Bar personally served him should not have been followed by a grant of that motion. After the Special Master's email, the Bar was left with the decision to either stand on its prior service by publication and its motion for default based thereon—with the right to seek review if the Special Master indeed denied that motion and issued a report and recommendation in accordance with such denial, see Bar Rules 4-214; 4-216—or to follow the path it ultimately took, providing Sammons with a new opportunity to file a timely answer under the Bar Rules.

Although we do not adopt the full analysis of the Review Board, we do agree with its ultimate recommendation that "the entry of

default be vacated, and that the case be remanded back to the Special Master for discovery and an evidentiary hearing as if no default had been granted."  Accordingly, we vacate the Special Master's order granting the Bar's motion for default and the Special Master's report and recommendation, and we remand this matter to the Special Master with direction that he decide the merits of the case in accordance with the applicable rules and law.

*Vacated and remanded with direction. All the Justices concur.*

PETERSON, Presiding Justice, concurring specially.

I share the Review Board's "serious concerns about the rules giving the State Bar the ability to effectuate service by publication, especially when a lawyer can be so easily found, as was the case" with Mr. Sammons. The policy underlying the State Bar disciplinary process has a strong preference for "deciding cases on their merits," rather than by default. *In the Matter of Boyd*, 315 Ga. 390, 394 (882 SE2d 339) (2022). This policy is frustrated – and discipline bears little relation to protecting the public – when a disciplinary matter is resolved on default grounds because the lawyer did not have actual notice of the proceeding.

Default is a necessary part of the disciplinary process because many lawyers who commit serious violations simply refuse to participate in the process. The public would be at considerable risk if those lawyers were allowed to evade discipline simply by staying on the sidelines. But that's not what happened here, and enforcing default in these circumstances (instead of proceeding to the merits) would not protect the public.

Rule 9.3 requires lawyers to "respond to disciplinary authorities in accordance with State Bar Rules." The maximum penalty for violation of that rule is merely a public reprimand. And there is no Rule of Professional Conduct imposing discipline for a lawyer's failure to update their official address on file with the Bar, as required by Rule 4-203.1. But when default is the result of personal service attempted only on the address on file – without any attempt to determine whether a different, correct address is readily ascertainable – followed by service by publication, it converts a violation of those two requirements into the functional equivalent of an automatic disbarment. This is not how the system should work. Whether or not the Bar was authorized to serve by publication, it should not have done so before taking the simple steps that found Mr. Sammons. Accordingly, I concur in the judgment only.